**Law Office of Richard J. Murphy, P.L.C.**
10632 N. Scottsdale Road, #B-439
Scottsdale, Arizona 85254
Telephone: (602) 296-4962
Email:  Richard@phoenixspedlaw.com
Richard J. Murphy, State Bar #026551
Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Sophia Flores-Ward, individually, | |
| Plaintiff, | No. |
| v. | |
| Catalina Foothills School District #16, | **COMPLAINT FOR DAMAGES** |
| Defendant. | |
| | (Jury Trial Requested) |

Plaintiff, Sophia Flores-Ward, alleges as follows:

## <u>INTRODUCTION</u>

1.      This is a discrimination claim against the Catalina Foothills School District #16 under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504") and its implementing regulations and the denial of a free appropriate public education ("FAPE") under Section 504.

2.      CFSD failed to comply with Section 504 and its implementing regulations during the 2018-2019 school year by not meeting with Plaintiff and her guardians to develop a Section 504 plan despite knowing that Plaintiff needed a Section 504 plan.

3.      Section 504 provides a cause of action for money damages and other relief, where an entity operating a program or activity receiving Federal financial assistance, acting with deliberate indifference, discriminates against a person with a disability, and/or fails to provide or otherwise prohibits reasonable accommodation and/or meaningful

access to such program of activity. Section 504 applies to all public schools that receive Federal financial assistance, as 29 U.S.C. § 794(b)(2)(B) defines "program or activity" to include the operations of "local educational agenc[ies]."

## PARTIES

4.      Plaintiff, Sophia Flores-Ward is a person with a disability who was born in 2003 who resides in Pima County.

5.      Defendant, Catalina Foothills School District #16 ("CFSD") is a public school district duly organized under the laws of the state of Arizona and a recipient of federal financial assistance. CFSD is located at 2101 E. River Road, Tucson, Arizona 85718.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction under and 28 U.S.C. § 1331, as this action arises under the Constitution and laws of the United States and based on Section 504, 29 U.S.C. § 794 (a).

7.      Venue is proper in the Tucson Division of the District of Arizona under 18 U.S.C. § 1391 (b) because it is the judicial district in which Defendant resides and all events giving rise to this action occurred in Pima County, Arizona.

## PROCEDURAL HISTORY

8.      On January 12, 2021, Patricia Flores, Sophia's guardian at the time, filed a due process complaint against CFSD pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415 (c) and (f), on behalf of Sophia.

9.      The IDEA due process complaint included allegations that CFSD discriminated against Sophia and denied her FAPE under Section 504. In addition, the due process complaint included three allegations that CFSD also denied FAPE under the IDEA.

10.    On January 25, 2022, the Administrative Law Judge issued an order that Plaintiff's Section 504 claims would not be considered because of the limited jurisdiction of the Tribunal. In addition, the order limited the duration of one of Plaintiff's IDEA claims.

11.    On February 1, 2022, the Administrative Law Judge entered a Consent Order finding in favor of CFSD on Plaintiff's allegations on two of its remaining IDEA claims. Plaintiff dismissed a third IDEA claim.

12.    Plaintiff was required to exhaust her administrative remedies using the IDEA due process procedures because the gravamen of her claims are CFSD's denial of appropriate educational services including but not limited to the denial of FAPE. *Fry v. Napoleon Community Schools,* 137 S. Ct. 743, 197 L.Ed.2d 46 (2017).

13.    Plaintiff has exhausted her administrative remedies on her Section 504 claims as required under 20 U.S.C. § 1415 (l). In the Ninth Circuit, the exhaustion of administrative remedies is not jurisdictional but is instead a claims processing provision. *Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 867 (9th Cir. 2011) overruled on other grounds by *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014).

14.    This matter is timely filed because it was filed within 35 days of the entry of the Consent Order issued on February 1, 2022. Arizona Administrative Code R7-2-405 (II)(8) (allowing 35 days for a party to appeal an administrative law judge decision in an IDEA claim.)1

15.    Additionally, the due process complaint was filed within two years of the date Plaintiff knew or should have known that CFSD did not comply with Section 504 and its implementing regulations.

16.    In addition, Plaintiff was a minor when the events underlying this matter occurred, which would additionally toll her statute of limitations on her Section 504 claims until two years after she turns 18 years old.

---

1 Plaintiff is not appealing the decision in the due process case.

**Flores-Ward v. CFSD: Complaint**

1

## FACTS

2      17.     Sophia Flores-Ward is an 18-year-old student who has been diagnosed with

3  attention deficit hyperactivity disorder – inattentive type ("ADHD"), anxiety and

4  depression. She is currently in the 12th grade and attending Tucson High School in the

5  Tucson Unified School District ("TUSD").

6      **Relevant Educational History before CFSD**

7      18.     Before attending school in CFSD, Sophia attended private school at Saints

8  Peter and Paul Catholic School ("SSPP") through 8th grade and the 2017-2018 school

9  year.

10      19.     Beginning with the 2012-2013 school year, Sophia demonstrated below

11  grade level academic skills in English language arts and math based on IOWA Basics

12  standardized testing.

13      20.     During this time, Sophia began receiving some reading services from

14  TUSD under Title I services. She also worked with a resource teacher for academic

15  supports.

16      21.     On March 29, 2016, when Sophia was in the 6th grade, Ms. Flores had her

17  evaluated by Rebecca McReynolds, PhD. Dr. McReynolds found that Sophia's overall

18  broad reading, basic reading and reading fluency were very limited and her reading

19  comprehension, reading rate and phoneme-grapheme knowledge were limited. Sophia's

20  broad math and calculation were also very limited. She also found that spelling and

21  editing would be difficult for Sophia.

22      22.     With the evaluation, Dr. McReynolds also assessed Sophia's social

23  emotional functioning. Dr. McReynolds found Sophia to be at risk for anxiety,

24  hyperactivity and school problems.

25      23.     In her recommendations, Dr. McReynolds found that "Sophia will most

26  likely learn slowly and require much practice, repetition, and review in order to learn and

27  be successful in school." Dr. McReynolds recommended that Sophia be placed in a small

28

**Flores-Ward v. CFSD: Complaint**

class with low student-teacher ratio and be given intensive instruction in basic academic skills.

24.     TUSD began the evaluation process for Sophia on April 28, 2016 and held a review of existing data ("RED") meeting on May 16, 2016. The RED report noted the interventions used at SSPP to address Sophia's needs. These included individual tutoring, classroom seating accommodations, rephrasing questions, planning for written assignments, copies of notes, DIBELS progress monitoring for reading and math, resource help, Title I reading, repeated timed readings, phoneme-grapheme power tools for literacy, accelerated phonics and extended time for tests.

25.     The RED report noted that Sophia was below grade in reading and writing and in the 1st percentile for math. TUSD noted that "Sophia's reading level inhibits her from fully understanding content material at grade level."

26.     On July 9, 2016, Sophia was diagnosed with ADHD, inattentive type by Howard D. Toff, M.D., PhD. Dr. Toff recommended that Sophia receive accommodations.

27.     For the 2016-2017 school year, Sophia continued to attend SSPP for the 7th grade.

28.     After the ADHD diagnosis by Dr. Toff, SSPP developed a "Crusader Action Plan" for Sophia dated August 8, 2016. This Plan is similar to a plan under Section 504 and included accommodations of class notes, breaking down directions, chunking assignments including long term assignments and additional time on assessments.

29.     Ms. Flores sent Sophia to a private tutor to help with her academics. Carolyn Lee, Ph.D., tutored Sophia from August 2016 through February 2017.

30.     Dr. Lee also evaluated Sophia's reading and written language on April 13, 2017. Dr. Lee found that Sophia had instructional decoding skills for 6th and 7th grade

level material. This means that she had "some facility with the material if teacher/skilled reader support is given."

31.    On the Test of Written Language subtests, Sophia scored below grade level in all areas assessed. Her scores ranged from the 4.2 grade level equivalent in contextual conventions to the 6.2 grade level for contextual language. She also failed to use appropriate conventions in her writing.

32.    Dr. Lee's assessment showed that with the private tutoring, Sophia had made some improvements in her reading and writing. Dr. Lee recommended Sophia receive additional instruction in word attack strategies and review new vocabulary before beginning reading assignments. This would help her with her comprehension difficulties. Dr. Lee recommended direct instruction in conventions.

33.    In May 2017, Sophia finished the 7th grade year at SSPP with a D- in math, a D+ in science and social studies, a C in academic writing and English language arts. The grades were noted to be reflective of the Crusader Action Plan.

34.    For the 2017-2018 school year, Sophia continued as a student at SSPP for her 8th grade year.

35.    On November 15, 2017, Sophia took the Scholastic Testing Service High School Placement test. Sophia scored below average in all areas of reading, writing, language and on her composite score. Her highest grade equivalent was a 7.1 in language, but she scored a 6.5 grade equivalent in math, 6.9 in reading and a 6.8 overall.

36.    Sophia was not accepted into her preferred school of Salpointe Catholic High School based on those scores and her overall academic performance.

**Open Enrollment Application Process at CFSD**

37.    On February 15, 2018, Ms. Flores completed an open enrollment application with CFSD for 9th grade with the 2018-2019 school year because Sophia did not reside in CFSD.

38.    On the application, Ms. Flores noted that Sophia had a 504 plan but noted that Arizona Catholic schools did not participate in Section 504 and IEP programs. She notified CFSD that SSPP initiated an action plan due to Sophia's diagnosis of ADHD.

39.    In response to CFSD's application question of "Is child in need of the following services?" Ms. Flores responded that Sophia needed a 504 plan and wrote: "Initiating an IEP or 504 for Sophia could be necessary."

40.    On February 21, 2018, Ms. Strauss from CFSD emailed Ms. Flores to obtain special services records from Ms. Flores. The checklist of records requested was signed by Erin Matyjasik, CFSD's special education director.

41.    On April 16, 2018, Ms. Flores was notified that the application was pending review by the Special Services department.

42.    Dr. Matyjasik recommended accepting the open enrollment application on May 10, 2018.

43.    Dr. Matyjasik noted in the internal record that was received by Petitioners' counsel on September 15, 2020 that Sophia's "needs may trigger a SPED evaluation; student may require an IEP. HS currently has room for additional students with IEPs. Recommend accepting."

44.    On June 13, 2018, Ms. Flores responded to CFSD's request for certain enrollment records with an explanation of some of her concerns about Sophia's education. Specifically, she wrote: "While Catholic schools are not required to provide 504, IEP benefits, each school CAN provide help that takes a similar appearance as the programs available in the public school system. Unfortunately, there's so much more to the learning needs of students who qualify for learning plans and the plan that SSPP has in place falls short as far as the 'big picture' goes especially as to the emotional issues that these young adults face when they feel that they are not as smart or that they cannot compete with their peers. While I know that's not so, having that be part of the curriculum help can be very beneficial. I do need to know what is needed by your school in order to

**Flores-Ward v. CFSD: Complaint**

make sure that the classes that Sophia chooses are in line with what she needs. This is new experience for both of us and I don't want Sophia to choose classes that are not part of the learning plan program at CFHS."

45.    Ms. Flores wanted to meet with Ms. Randie Collier, a CFSD counselor, to discuss her concerns and wanted a 504 plan to be developed for her.

46.    On July 9, 2018, Mr. Flores emailed Ms. Cusack about a possible meeting with Ms. Collier. She wrote that the SSPP did not provide a 504 plan or IEP but wanted to discuss the plan SSPP had put in place before finalizing Sophia's courses for the 9th grade.

47.    On July 23, 2018, Ms. Flores reiterated her request for a meeting with a 9th grade counselor about the enrollment process because CFSD notified her that because certain documentation was not completed that Sophia would not be able to enroll at CFHS.

48.    In response, Ms. Flores wrote: "I have wasted an entire summer waiting to discuss enrollment, 504 and IEPs, which I have no intimate knowledge of and need guidance in order to ensure that Sophia chooses the right classes for her." Ms. Flores provided a copy of the Crusader Action Plan.

49.    The meeting with Ms. Collier unfortunately did not occur.

**Attendance in CFSD for 2018-2019 School Year**

50.    For the 2018-2019 school year, Sophia attended Catalina Foothills High School for the 9th grade.

51.    For the entire school year, Sophia needed at least a 504 plan to meet her needs. At no point during the 2018-2019 school year did CFSD meet with Ms. Flores to develop a 504 plan for Sophia.

52.    CFSD provided records that include an unsigned 504 plan bearing a date of August 9, 2018. This was not the result of a meeting with Ms. Flores or any member of

**Flores-Ward v. CFSD: Complaint**

CFSD team. Plaintiff alleges that the unsigned 504 plan was not implemented by CFSD during the 2018-2019 school year.

53.    The unimplemented and unsigned 504 plan repeated the accommodations in the Crusader Action plan from SSPP.

54.    At all times relevant, Sophia was a person with a disability under Section 504.

55.    CFSD is a recipient of federal financial assistance under Section 504 and its implementing regulations. 34 C.F.R. §104.31 -104.37.

56.    34 C.F.R. §104.32 provides that CFSD, as a recipient must "identify and locate every" person with a disability and notify the person and their parents of CFSD's obligations under Section 504.

57.    34 C.F.R. §104.33 provides that one of the obligations of CFSD is to provide FAPE to persons with disabilities including "the provision of regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met and (ii) are based upon adherence to procedures that satisfy the requirements of 104.34, 104.35, and 104.36."

58.    34 C.F.R. §104.35 (a) provides: "A recipient that operates a public elementary or secondary education program or activity shall conduct an evaluation in accordance with the requirements of paragraph (b) of this section of any person who, because of handicap, needs or is believed to need special education or related services before taking any action with respect to the initial placement of the person in regular or special education and any subsequent significant change in placement."

59.    34 C.F.R. §104.35 (c) provides that placement decisions must be made based on information from a variety of sources, establish procedures to ensure that information from all such sources is documented and carefully considered and ensure that

**Flores-Ward v. CFSD: Complaint**

the placement decisions are made by a group of persons including those knowledgeable about the child and that placement decisions are made consistent with § 104.34.

60.     34 C.F.R. § 104.36 provides that CFSD is required to provide a system of procedural safeguards related to the identification, evaluation or placement of persons with disabilities.

61.     34 C.F.R. § 104.37 provides that students with disabilities be provided equal opportunity for participation in nonacademic and extracurricular services and activities including but not limited to physical recreational athletics. CFSD is prohibited from discriminating on the basis of disability. 34 C.F.R. § 104.37 (c).

62.     Section 504's regulations provide that CFSD's compliance with the IDEA for procedural safeguards and implementation of an IEP could serve as compliance with Section 504 and its implementing regulations.

63.     CFSD has policies and procedures in place for Section 504.

64.     CFSD policy IHBA-RA requires that an evaluation be conducted before determining eligibility for a 504 plan. Specifically, IHBA-RA provides: "Evaluation of the student and formulation of a plan of services will be carried out by CFSD according to the following procedures:

- The District will evaluate the nature of the student's disability and the impact of the disability upon the student's education. This evaluation will include consideration of any behaviors that interfere with regular participation of a student . . .

- No final determination of whether the student will or will not be identified as a student with a disability within the meaning of Section 504 will be made by the District without first inviting the parent or guardian of the student to participate in a meeting concerning such determination.

**Flores-Ward v. CFSD: Complaint**

- A final decision will be made by the District in writing, and the parents or guardian of the student shall be notified of the Section 504 procedural safeguards available to them, including the right to an impartial hearing and review.

65.   CFSD failed to comply with any of these procedures or Section 504's implementing regulations.

66.   Policy IHBA-RA further provides for parent participation in developing any plan for services. Specifically, IHBA-RA provides:

- "The parents or guardian shall be invited to participate in District meetings where services for the student will be determined, and shall be given an opportunity to examine all relevant records."

- "The District will develop a written plan describing the disability and the special education or related services needed. The plan will specify how the regular or special education and related aids and services will be provided, and by whom."

- "The District may also determine that no special education or related services are appropriate. If so, the record of the District proceedings will reflect the identification of the student as a person with a disability and will state the basis for the decision that no special services are presently needed."

67.   CFSD never invited Ms. Flores to a meeting and no meeting was ever conducted. While CFSD claims to have developed a written 504 plan, the records do not state the basis for any decision that no special services were needed for Sophia.

68.   IHBA-RA further requires "The District shall notify the parents or guardian in writing of its final decision concerning the service to be provided." CFSD failed to comply with this part of IHBA-RA.

69.     If CFSD developed a plan, it was required under IHBA-RA to make sure that all school personnel who work with the student are informed of the plan. This was not done either.

70.     CFSD's failure to convene a meeting to evaluate and assess Sophia's needs denied Sophia FAPE under Section 504.

71.     CFSD's failures to comply with Section 504's regulations and its own policies and procedures evinces deliberate indifference to its obligations as well as Sophia's rights and needs and her parents' rights.

72.     Had CFSD complied with its obligations under Section 504 and its implementing regulations and IHBA-RA, Ms. Flores would have discussed her concerns in a meeting at or near the beginning of the 2018-2019 school year and Sophia would likely have been evaluated for special education at that time and her educational needs could have been addressed.

73.     As a result of CFSD's failures, Sophia's 9th grade year at CFHS was negatively impacted and she lost out on educational benefits, extracurricular activities and caused Sophia increased anxiety, isolation, and a decrease in her self-esteem. Additionally, Ms. Flores was denied the opportunity to participate in Sophia's education and addressing her needs.

74.     In the Fall 2018, Sophia completed a College Work Readiness Assessment ("CWRA"). She scored below basic in her overall score, analysis and problem solving, writing effectiveness, writing mechanics, scientific and quantitative reasoning, critical reading and critiquing an argument. The findings from the CWRA showed that Sophia did not meet the minimum requirements to merit a basic level of mastery. She was ranked in the 3rd percentile based on her scores.

75.     In the first semester of the school year, Sophia struggled academically and socially. She was in danger of failing her global issues class. She ended up with 2 C-'s, 2 D's (Global issues and Spanish) and Fs in English and Algebra.

**Flores-Ward v. CFSD: Complaint**

76.    Significantly, there was no reference in any of CFSD and teacher communications to accommodations being provided to Sophia or her alleged 504 plan being implemented.

77.    Sophia was not permitted to participate on the softball team because of her grades. (Sophia had been made a member of the Junior Varsity Softball Team at CFHS. She had purchased uniforms and equipment and attended practices and fundraisers before being removed for failing grades.) Ms. Flores requested several times to look into this issue, but it was not resolved and Sophia was not allowed to play for the softball team.

78.    On January 17, 2019, Ms. Flores emailed Ms. Collier that she would "like to look at how we can use an IEP for Sophia." Following this email, CFSD asked if Sophia had ever been on an IEP. Ms. Flores responded that Sophia had always been in private schools. Ms. Flores also noted that Sophia was 2-3 grade levels below in her academics.

79.    Following that communication, Ms. Collier wrote to other District team members that "the fact that she [Ms. Flores] waited to request an IEP could be an issue for an open enrolled student with significant known learning issues." But CFSD's special education director, Dr. Matyjasik was aware of the potential need for a special education evaluation and an IEP before the open enrollment application was approved.

80.    After some discussion, CFSD treated Ms. Flores's request for an IEP as a request for an evaluation and put Sophia on the Student Study Team ("SST"). CFSD also discussed developing a 504 plan for Sophia.

81.    Ms. Flores wanted to make sure that Sophia could be reinstated to the softball team. Ms. Collier responded that she would need to get her grades up to qualify.

82.    On January 24, 2019, Ms. Flores asked CFSD if they had the testing from Dr. McReynolds and the TUSD testing. Ms. Flores thought these had been provided by SSPP when their records were provided to CFSD.

**Flores-Ward v. CFSD: Complaint**

83.     Ms. Collier sought the input of Sophia's teachers as part of the SST referral. The teachers noted many issues and concerns including lack of skills, poor effort and attitude, unwillingness to complete work, and being a disruption in class.

84.     As part of the SST records, Sophia had an F in Global issues, English 9, Spanish 1 and Algebra 1 as of February 5, 2019. CFSD recommended that Sophia attend tutoring for algebra.

85.     On February 12, 2019, CFSD held a RED meeting. CFSD noted that "Parent reports that she did not know Sophia had a 504 plan." Nothing in CFSD's records show that Ms. Flores was ever notified about the alleged 504 plan.

86.     CFSD agreed to conduct an evaluation of Sophia for special education eligibility.

87.     On March 4, 2019, Ms. Flores wrote to Ms. Black reiterating that she did not know about the alleged 504 plan for Sophia and that, as a result, 9th grade for Sophia has been disappointing and useless.

88.     Ms. Flores reiterated her concerns about the alleged 504 plan and the fact that there was no meeting to develop the 504 plan to Ms. Singer by emails on March 15, 2019 and March 19, 2019. She also requested that the restrictions on softball be removed immediately.

89.     On March 19, 2019, Ms. Flores provided CFSD with a copy of the McReynolds evaluation from 2016.

90.     On April 3, 2019, CFSD held a MET meeting and determined that Sophia did not qualify for special education. But CFSD recommended additional academic support.

91.     Sophia continued to struggle in the rest of the 2018-2019 school year.

92.     Sophia was taken out of her math class and placed in a Course Emporium class that involved working on a computer. Ms. Flores did not know this change was

made. Sophia was not advised of the expectations for her move to this class and was essentially left in the classroom after being placed there by Mr. Singer.

93.     For the second semester, Sophia only earned a total of 1 credit for Global Issues and Theatre Fundamentals. She failed English 9, Spanish 1 and PE Strength and Fitness. Sophia received no grade for the Course Emporium class.

94.     Sophia's GPA at CFSD was 0.727.

95.     At no point during or after the IDEA process did CFSD meet to develop a Section 504 plan for Sophia.

96.     Sophia took the AZ Merit test for math in the Spring 2019. She scored in the minimally proficient range. CFSD did not permit Sophia to take the AZ Merit for English Language Arts because she had not passed English 9 in the first semester. However, this was improper and Sophia should have taken the AZ Merit test.

97.     On July 22, 2019, Ms. Flores filed a complaint with the Office of Civil Rights ("OCR") with the Department of Education. In the complaint, Ms. Flores alleged that CFSD discriminated against Sophia by not developing and implementing a 504 plan to meet her needs.

98.     On December 12, 2019, CFSD entered into a Resolution Agreement with OCR to resolve the complaint. CFSD agreed to develop training materials to train its staff on Section 504 obligations and to provide written assurances of its knowledge of CFSD's FAPE obligations.

99.     For the 2019-2020 school year, Sophia enrolled at Tucson High School in TUSD for 10th grade.

100.    TUSD developed a Section 504 plan for Sophia on July 23, 2019 based on ADHD, anxiety and depression affecting her learning. The TUSD 504 plan included accommodations of allowing Sophia to leave class, preferential seating and allowing note cards as a reference on her tests.

**Flores-Ward v. CFSD: Complaint**

101.    On February 25, 2020, Ms. Flores requested independent educational evaluations ("IEEs") from CFSD. CFSD approved the IEEs for Sophia in early March 2020.

102.    The IEEs were conducted by Dr. Janice Sammons for the psychoeducational IEE and Guy Garcia for the speech-language IEE but were delayed due to COVID-19.

103.    In September 2020, Dr. Sammons completed her evaluation. Dr. Sammons found that Sophia was mildly impaired in reading with scores lower than the first percentile in word attack and the 3rd percentile for basic reading. Dr. Sammons wrote that "These basic reading skills and poor fluency affect her ability to understand what she reads."

104.    She also noted that Sophia would only be expected to have 27% success on similar reading rate tasks "which will make the completion of reading tasks very difficult without accommodations (i.e., extra time) and interventions." So, Dr. Sammons found that Sophia required interventions in order to succeed in reading.

105.    From Dr. Sammons' report, Sophia was still demonstrating difficulty with conventions identified by Dr. Lee in April 2017.

106.    Dr. Sammons found that Sophia's was expected to have 51% success on grade level math tasks compared to her peers. She also found that for Sophia completing "grade level tasks will be very difficult without interventions and accommodations." Dr. Sammons also found that Sophia's math was impacted by her reading deficits because she did better with word problems when they were read to her.

107.    Dr. Sammons noted that "Sophia has problems with learning, understanding, or remembering academic material, including reading, writing and math."

108.    Dr. Sammons noted that Sophia was demonstrating "significant difficulties related to anxiety and depression." Although Dr. Sammons did not recommend eligibility

for special education, her findings support eligibility under other health impairment ("OHI").

109.    Guy Garcia conducted his IEE for speech-language over a few sessions in the fall 2020. Mr. Garcia found based on his testing that Sophia has a language/literacy disorder.

110.    He recommended that Sophia should qualify for special education under the speech-language impairment ("SLI") category of eligibility for expressive and receptive language and word finding. He recommended 60 minutes per week of targeted speech-language interventions.

111.    Sophia was found eligible for special education and related under the category of OHI, based on her ADHD, as well as SLI by TUSD on January 11, 2021.

## COUNT I: SECTION 504 DISCRIMINATION:

112.    Plaintiff incorporates by reference the allegation in paragraphs 1-111 inclusive.

113.    A school district violates Section 504 if it denies a qualified individual with a disability a reasonable accommodation that the individual needs in order to enjoy meaningful access to the benefits of public services.

114.    It is a denial of reasonable accommodation and a violation of Section 504 if (1) a student needs disability-specific services to enjoy meaningful access to the benefits of a public education, (2) a school district was on notice that the [student] needed those disability-specific services, but did not provide those services, and (3) disability-specific services were available as a reasonable accommodation. *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010).

115.    CFSD, as a recipient of federal financial assistance, discriminated against Sophia, a person with a disability under Section 504, by failing to comply with Section 504 and its implementing regulations (34 C.F.R. § 104.31-104.37) and its own policies

and procedures (IHBA-RA) by not meeting with Ms. Flores to develop and implement an appropriate Section 504 plan for Sophia.

116.    CFSD had notice of Sophia's need for an accommodation and failed to act which constitutes deliberate indifference.

117.    CFSD's notice is established by Ms. Flores notifying CFSD that Sophia had a plan similar to a 504 plan when she applied for open enrollment and registered Sophia for school in CFSD. In addition, Sophia's need for accommodations was obvious, and/or required by statute or regulation. *A.G. v. Paradise Valley Unified School District,* 815 F.3d 1195, 1207-1208 (9th Cir. 2016).

118.    Each of the violations below on their own or in combination discriminated against Sophia. More specifically, CFSD:

   a.   Knew that Sophia had educational needs that required a 504 plan;

   b.   Knew that Section 504's regulations and IHBA-RA required an evaluation of Sophia, notification to her parents or guardians of CFSD's obligation, a meeting to discuss the evaluation and develop a Section 504 plan and a written decision;

   c.   Failed to comply with 34 C.F.R. § 104.32 and IHBA-RA by not identifying Sophia as a person with a disability;

   d.   Failed to provide FAPE under Section 504 to Sophia under 34 C.F.R. § 104.33 and IHBA-RA;

   e.   Failed to evaluate the nature of Sophia's disabilities and their impact on her education, hold a meeting and/or ensure that the placement decision was made by a knowledgeable group of persons as required under 34 C.F.R. § 104.34 and 104.35 and IHBA-RA;

   f.   Failed to notify Ms. Flores in writing of the decision and failed to provide procedural safeguards under Section 504 and IHBA-RA;

   g.   Denied Sophia access to extracurricular activities including participation on the softball team under 34 C.F.R. § 104.37;

   h.   Discriminated against Sophia based on her disability;

   i.   Acted with deliberate indifference;

18

**Flores-Ward v. CFSD: Complaint**

j.   Caused Sophia damages based on its failures.

119.   CFSD's deliberate indifference to Sophia's federally protected rights resulted in discrimination against Sophia and denied Sophia reasonable accommodation for her educational disabilities and meaningful access to public education, thereby entitling Plaintiff to recover special and general damages from CFSD under Section 504 of the Rehabilitation Act in amounts to be shown at trial.

WHEREFORE, Plaintiff requests relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

120.   For damages according to proof, for items including but not limited to: costs for Student's additional medical care and treatment to deal with the emotional distress caused by Defendant; costs for tutoring or other programs to remediate the academic regression and lack of academic progress caused by Defendant's actions; additional time in school resulting in a delay in graduation from high school, general damages for pain and suffering, stress, and emotional damages caused by the Defendant; and other damages items to be shown at trial.

121.   For costs of suit incurred herein including attorneys' fees where applicable;

122.   Such other and further relief as the Court deems just and proper.

Respectfully Submitted on March 3, 2022.

The Law Office of Richard J. Murphy, P.L.C.


_____/s/ Richard J. Murphy_____
Richard J. Murphy
Attorney for Plaintiffs

**Flores-Ward v. CFSD: Complaint**